**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| TRACY BROWN, et al., | |
| Plaintiffs, | Case No. 1:26-cv-07487 |
| v. | Hon. Manish S. Shah |
| UNITED AIRLINES, INC., | |
| Defendant. | |

**JOINT INITIAL STATUS REPORT**

Pursuant to Federal Rule of Civil Procedure 26(f), Plaintiffs Tracy Brown, et al. (collectively, "Plaintiffs") and Defendant United Airlines, Inc. ("United") (collectively, the "Parties") jointly submit this Initial Status Report:

1. **Nature of the Case**

   a. Attorneys of Record

      - **For Plaintiffs:**

        John C. Sullivan – S|L Law PLLC (Lead Attorney)
        610 Uptown Boulevard, Suite 2000
        Cedar Hill, TX 75104
        Telephone: (469) 523-1351
        john.sullivan@the-sl-lawfirm.com

      - **For Defendant:**

        Jonathan M. Linas – Jones Day (Lead Attorney)
        110 N. Wacker Drive, Suite 4800
        Chicago, Illinois 60606
        Telephone: (312) 269-4245
        jlinas@jonesday.com

        Jordan M. Matthews – Jones Day
        110 N. Wacker Drive, Suite 4800
        Chicago, Illinois 60606
        Telephone: (312) 269-4169
        jmatthews@jonesday.com

Alexander Maugeri – Jones Day
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3880
amaugeri@jonesday.com

Kristin M. Simonet – Jones Day
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: (612) 217-8869
ksimonet@jonesday.com

b.  Basis for Federal Jurisdiction

This Court has federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs assert claims arising under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

This case was originally filed in the Northern District of Texas on September 23, 2024 (Case No. 4:24-cv-00902). On June 25, 2026, the Honorable Judge Mark T. Pittman granted United's Renewed Motion to Transfer Venue (ECF No. 44), transferring this case to the Northern District of Illinois. The case was received by this Court on June 26, 2026 and assigned to this Court's calendar on July 2, 2026.

c.  Nature of Claims

Plaintiffs' Position:

In the summer of 2021, United started its campaign to coerce its employees to violate their religious beliefs and ignore their health.  When the COVID-19 vaccines came out, United decided to mandate that all employees receive one of the COVID-19 vaccines.  Second Amended Complaint (SAC) ¶ 2.  Along with that decision came United's refusal to provide any reasonable accommodations.  *Id.*  United's Chief Executive Officer (CEO), Scott Kirby, stood proudly behind this decision and stated publicly that all unvaccinated employees would be terminated by the end of September 2021.  *Id.* ¶ 2.  Despite being legally obligated to offer accommodations, Mr. Kirby doubled down and continued to make it clear that United would not provide religious or medical

2

accommodations for any employees. *Id.* ¶ 3. This opinion trickled down into Human Resources. *Id.* This decision ultimately led to the Plaintiffs in this litigation either being placed on indefinite unpaid leave, terminated, subjected to severe testing and masking measures, forced to resign or retire under duress, demoted or subject to other job limitations, or coerced into taking the vaccine. *Id.* ¶¶ 5, 7, 10, 16–21.

Plaintiffs are a group of employees and former employees of United who requested or tried to request a religious and/or disability accommodation from United's Mandate and against whom United discriminated or retaliated because of Plaintiffs' religious beliefs or disabilities. They were individuals swept into United's discriminatory policy but who were not made part of the class certified in *Sambrano v. United Airlines, Inc.*, 4:21-cv-01084 (N.D. Tex.). This group comprises workers from all areas of the company, various locations, and various work groups—all who were either terminated, forced to resign/retired under duress, coerced into taking the vaccine, put on unpaid leave, or treated worse in their employment by punitive accommodations and other changes in their terms of employment once the airline determined that it could change course and allow some unvaccinated employees to continue working (but only after a temporary restraining order in *Sambrano* halted United's coercion plan). What they all have in common is that United could have accommodated their religious beliefs or disability but purposefully chose to discriminate against them.

Most Plaintiffs were promised unpaid leave as their "accommodation" from the vaccine mandate and then allowed to continue working after the *Sambrano* TRO. But even then, employees could not escape United's coercion. Rather, United adopted a uniform discriminatory approach, dividing everyone who requested accommodations into just two groups: (1) those placed on indefinite, unpaid leave, consisting mostly of employees United deemed customer facing; and

(2) all other "accommodated" employees, whom United subjected to a draconian masking-and-testing accommodation, which required wearing a respirator at all times, even while sitting alone, and taking frequent tests for COVID-19, even while on vacation or extended leaves of absence (including FMLA and sick or occupational leave). Because "accommodated" employees were required to wear respirators, it was easy for other employees to identify and harass them. Making clear that the masking-and-testing accommodation was intended to still be coercive, Kirby demanded that this policy sound "very serious" and impose harsh consequences, including immediate termination for any infraction.

United's Position:

This is a mass-action lawsuit brought by 709 current and former employees of United alleging individual claims for violations of Title VII of the Civil Rights Act and the Americans with Disabilities Act (ADA). Plaintiffs' claims arise from United's COVID-19 vaccine policy announced on August 6, 2021, which required all U.S.-based employees to get vaccinated by September 27, 2021, to ensure the safety of its workforce. United's vaccine policy followed the deaths of dozens of United employees from COVID-19 and was the product of consultation with outside medical experts at the Cleveland Clinic and the CDC, among others. As part of its implementation, United provided employees with the opportunity to request a religious or medical accommodation from the policy. In November 2021, United placed certain customer-facing flight crew employees who received accommodations on an unpaid leave of absence, with preferred placement in alternative open-positions, pursuant to their Collective Bargaining Agreements and safety considerations. Other non-customer-facing employees were accommodated with masking and testing protocols. With the rise of less deadly COVID variants in early 2022, United concluded it could safely return employees on leave to return to work in March 2022. United took a generous

4

approach to accommodations, as evidenced by the fact that it approved 75 percent of the religious accommodation requests it received.

The over 700 Plaintiffs here include current and former employees who requested, tried to request, or wished to request a religious and/or medical accommodation from United's COVID-19 vaccination requirement; employees who were placed on unpaid leave as part of a medical accommodation, used sick leave, worked while subject to a masking and testing protocol, were terminated, retired, or chose to get vaccinated; and workers with various job titles, in various work groups, and in various locations. Because the circumstances of each Plaintiff's claims—including, among other things, their job position, job duties, work location, accommodation request (if any), the nature of their alleged physical or mental impairment, the nature and sincerity of their religious belief(s), the accommodation they received, and their alleged damages—are different, this case will require the Court to resolve hundreds of individualized factual and legal issues that cannot be adjudicated on an aggregate basis using representative evidence.

No Plaintiff in this action meets the definition of a class member in *Sambrano v. United Airlines, Inc.*, No. 4:21-CV-1074 (N.D. Tex.). *See* Compl. ¶ 14. That putative class action, filed in 2021 in Texas, consisted of Title VII and ADA claims alleging retaliation and failure-to-accommodate by flight crew members as well as the various types of employees present in this *Brown* litigation. In December 2023, the district court dismissed all of the *Sambrano* plaintiffs' retaliation claims and various other named plaintiffs' claims as time-barred and/or as improperly exceeding the scope of their EEOC charge. On June 21, 2024, the *Sambrano* court rejected class certification of all of the plaintiffs' claims except those Title VII religious accommodation claims asserted by pilots and flight attendants who had received an accommodation that included unpaid leave. Excluded from the *Sambrano* class were those with ADA claims and any United employees

who did not receive unpaid leave as an accommodation. Plaintiffs here include those current and former employees outside the *Sambrano* class who are now pursuing individual (non-class) claims for relief under Title VII and/or the ADA. As the U.S. Court of Appeals for the Fifth Circuit explained—in affirming the district court's rejection of class action certification under Rule 23 for these ADA and Title VII Plaintiffs' claims—"Plaintiffs will have to present evidence that varies from member to member." *Kincannon v. United Airlines, Inc.*, 168 F.4th 713, 725 (5th Cir. 2026) (citation omitted); *see also id.* at 726 (explaining the individualized issues related to "whether someone has a qualifying disability under the ADA").

United asserts that Plaintiffs are not entitled to recover under any of the legal theories set forth in their Second Amended Complaint. United's defenses include, but are not limited to:

- *First*, a majority of Plaintiffs' claims are untimely because they filed suit after the 90-day deadline following receipt of the EEOC notice of right to sue.

- *Second,* a substantial number of Plaintiffs lack an EEOC right to sue letter or their claims exceed the scope of their EEOC charge, and must be dismissed for failure to exhaust administrative remedies.

- *Third*, none of the Plaintiffs raising ADA claims plausibly allege a qualifying disability.

- *Fourth*, of the Plaintiffs asserting Title VII religious claims and/or ADA claims, a majority fail to state a claim because they do not allege any adverse action.

- *Fifth*, United's accommodations were reasonable because they were appropriately tailored based on job roles and circumstances, including consideration of undue hardship on United.

- *Sixth*, Plaintiffs' retaliation claims fail as a matter of law because the actions Plaintiffs challenge were the result of a uniformly applied policy and the accommodation process itself, not in retaliation for any protected activity.

- *Seventh*, some or all of the Plaintiffs failed to mitigate alleged damages.

United will be prepared to fully address these and other defenses at the appropriate time.

    d.   <u>Major Legal and Factual Issues</u>

    <u>Plaintiffs' Position:</u>

Rather than complying with its obligations under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), United initially responded uniformly to all employees who requested an accommodation from the Mandate by informing the employees (including Plaintiffs) that they would be effectively terminated—placed on indefinite unpaid leave—unless they violated their faith or risked their health by receiving the COVID-19 vaccine. For those able to navigate United's onerous and flawed online accommodation request system (ironically named "Help Hub"), the ultimate reward—unless one acquiesced to the Mandate—was either functional termination, *i.e.*, indefinite unpaid leave; forced early retirement (under the threat of losing certain retirement benefits); punitive masking and testing; or demotion or other employment limitations. For those who failed to run United's procedural gauntlet—for any reason, including system failures on United's end—the penalty was actual termination or forced retirement, unless one acquiesced to the Mandate.

There was no legitimate business justification for these actions. Contrary to United's pretextual goal of "safety," the "real reason for the vaccine mandate and indefinite unpaid leave policy [wa]s 'virtue signaling' and 'currying political favor.'" *Sambrano v. United Airlines*, 45 F.4th 877, 879 (5th Cir. 2022) (Ho, J., concurring in denial of rehearing en banc). Indeed, it

subsequently became clear that United implemented the Mandate as part of a marketing campaign, rather than in pursuit of safety. Of course, United's other goal was to use the threat of termination (functional or actual) to coerce and intimidate its employees to abandon their sincerely held religious beliefs and health concerns by receiving the COVID-19 vaccine.

United's actions left Plaintiffs, like many other United employees, with the same crisis of conscience creating the impossible choice of either receiving the COVID-19 vaccine—at the expense of their religious beliefs and health—or losing their livelihoods. In doing so, United violated Title VII and the ADA by failing to engage in an individualized interactive process to provide reasonable accommodations, and also by retaliating against employees who engaged in protected activity.

And United's uniform refusal to provide reasonable accommodations caused severe harm. Hundreds of United employees, including some Plaintiffs, were terminated beginning just prior to the Thanksgiving and Christmas holidays in 2021. These employees lost not only their income and access to health insurance, but they also lost training cycles, currency, skills, seniority, vacation accrual, sick leave accrual, use of accrued travel privileges, retirement benefits, credit for future profit sharing and bonuses, as well as many other important career and professional benefits to include even their federal law enforcement credentials. And they endured the emotional stress of not knowing if or when they would ever be permitted to return to work. Further, hundreds of other United employees, including some Plaintiffs, after being threatened repeatedly with indefinite unpaid leave, were forced to give up their positions and accept significantly less lucrative or less senior positions, including positions with no union protections. Like their co-workers who were forced out of work, these employees lost income, schedules, overtime opportunities, and benefits that they had accrued through countless years of working at United. Some employees,

including some Plaintiffs, facing indefinite unpaid leave took the drastic step of retiring early to avoid being placed on indefinite unpaid leave or to preserve retirement benefits, while others resigned and gave up years of seniority in order to start over at a different airline. Some employees, including some Plaintiffs, were singled out by United and subjected to the Company's punitive masking-and-testing "accommodation." Others still were forced to violate their faith or risk their health by acquiescing to the Mandate to provide for themselves and their families.

United plans to challenge Plaintiffs' ability to bring many/all of these claims through a motion to dismiss, but there are numerous factual issues that will need resolution before any ruling against them can take place (including discovery into United's improper motives for implementing its discriminatory policy against exempt employees).

United's Position: United anticipates that the following major legal and factual issues will need to be resolved in this case:

*Threshold/Dispositive Issue:*

- For case efficiency and economy for the parties and the Court, United's forthcoming Motion to Dismiss should be resolved before discovery is taken. Given that hundreds of the Plaintiffs' claims are untimely, not administratively exhausted, or otherwise fail to state a claim, embarking on discovery on the 709 Plaintiffs' claims before United's dispositive motion is addressed is likely to create substantial and burdensome inefficiencies.

*Merits Issues:*

- Whether each Plaintiff raising ADA claims plausibly alleges a qualifying disability.

- Whether each Plaintiff raising a Title VII religious claim has a sincere objection to the COVID-19 vaccine that is religious in nature.

- Whether Plaintiffs asserting Title VII religious claims and/or ADA claims have alleged an adverse employment action and otherwise can plead (and or prove) a failure "to reasonably accommodate [each Plaintiff's alleged] religious observance or practice without undue hardship on the conduct of [United's business]." 42 U.S.C. § 2000e(j). *See also* 42 U.S.C. § 12112(b)(5)(A) (disability-related accommodations under the ADA) 12112(10)(A) (defining undue hardship under the ADA).

- Whether United's accommodations were reasonable as appropriately tailored based on job roles and each individual Plaintiff's circumstances.

- Whether any alternatives to United's accommodations imposed undue hardship.

- Whether Plaintiffs' retaliation claims fail because the challenged actions were the result of a uniformly applied policy and the accommodation process itself, rather than in retaliation for any protected activity.

- Whether some or all Plaintiffs failed to mitigate their alleged damages.

*Case Management Issues:*

- The individualized circumstances of each of the 709 Plaintiff's claims, including their job position, job duties, work location, accommodation request (if any), the nature of their alleged physical or mental impairment or religious belief(s), the accommodation received, and their individualized damages.

e. <u>Relief Sought:</u>

Plaintiffs seek declaratory relief (concerning the illegal regime through which United sought to impose its vaccine mandate) and a permanent injunction enjoining United from terminating, placing on unpaid leave, subjecting to a punitive mask-and-test protocol, or failing to promote/hire any employee who has a religious or medical basis for seeking an accommodation from a COVID-19 vaccine mandate. Plaintiffs also seek damages, including: back pay, reinstatement or front pay, lost seniority credit, accrued benefits, retirement contributions, pre-judgment and post-judgment interest, punitive damages, and compensatory damages. Plaintiffs also seek reasonable attorneys' fees and costs associated with bringing these claims.

**2. Pending Motions and Case Plan**

a. <u>Pending Motions and Briefing Schedule</u>

United's Motion to Dismiss Second Amended Complaint (ECF No. 29) was filed in the transferor court on May 26, 2026. Plaintiffs filed their Response on June 3, 2026 (ECF No. 40), and United filed its Reply on June 8, 2026 (ECF No. 42). The transferor court did not rule on the Motion prior to transferring the case.

United intends to re-file a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) in this Court by **August 3, 2026**. United respectfully requests that this Court rule on United's Motion to Dismiss before the Parties are required to propose a discovery schedule, as the Court's ruling will directly affect the number of Plaintiffs, if any, remaining in this case and the scope and nature of any discovery.

The parties propose the following briefing schedule related to its Motion to Dismiss:

- Plaintiff's Response to United's Motion to Dismiss: **30 Days after United's Motion to Dismiss.**

- United's Reply In Support of its Motion to Dismiss: **14 Days after Plaintiff's Response to United's Motion to Dismiss.**

b. Proposal for Discovery Plan

The Parties propose that within 14 days after the Court's ruling on United's Motion to Dismiss, the Parties will file a joint status report addressing a proposed discovery schedule.

c. Trial

A jury trial has been requested by Plaintiffs. Given the nature of this mass action involving 709 individual Plaintiffs' claims, the probable length of trial cannot be estimated until any threshold motions are resolved and the scope of remaining claims, if any, is determined.

**3. Consent to Proceed Before a Magistrate Judge**

The Parties do not consent to proceed before a Magistrate Judge.

**4. Status of Settlement Discussions.**

The parties have not engaged in settlement discussions in this matter and believe that such discussions cannot meaningfully proceed until the Court rules on United's Motion to Dismiss. Accordingly, the parties do not request a settlement conference at this time.

Dated: July 15, 2026

Respectfully submitted,

*/s/ John C. Sullivan*

John C. Sullivan
S|L Law PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: 469-523-1351
john.sullivan@the-sl-lawfirm.com

**ATTORNEY FOR PLAINTIFF**

*/s/ Jonathan M. Linas*

Jonathan M. Linas (Bar No. 6290055)
Jordan M. Matthews (Bar No. 6300503)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: 312.269.4245
jlinas@jonesday.com
jmatthews@jonesday.com

Alexander V. Maugeri (Bar No. 5062666)
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212.326.3939
amaugeri@jonesday.com

Kristin M. Simonet (Bar No. 0399213)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8869
ksimonet@jonesday.com

**ATTORNEYS FOR DEFENDANT
UNITED AIRLINES, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2026, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF filing system.


/s/ *Jonathan M. Linas*
Attorney for Defendant