**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TRACY BROWN, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>*Defendant*. | Civil Action No.: 1:26-CV-07487 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND BRIEF IN SUPPORT**

The factual allegations in the Second Amended Complaint more than sufficiently plead each and every one of Plaintiffs' claims, and the Court should find their claims to be timely. United's arguments are attempts to deny this Court and eventually a jury the opportunity to judge United's actions on the evidence. This Court should not allow United to hide its actions from ultimate disposition, on the merits, by this Court. United's Motion to Dismiss should be denied.

## BACKGROUND

In 2021, United coerced its employees to violate their religious beliefs and ignore their health. When the COVID-19 vaccines came out, United mandated that all employees receive one of the COVID-19 vaccines. Second Amended Complaint (SAC) ¶ 2. Along with that decision came United's refusal to provide any reasonable accommodations. *Id.* United's Chief Executive Officer (CEO), Scott Kirby, stood proudly behind this decision and stated publicly that all unvaccinated employees would be terminated by the end of September 2021. *Id.* Despite being legally obligated to offer accommodations, Mr. Kirby doubled down and continued to make it clear that United would not provide religious or medical accommodations for any employees. *Id.* ¶ 3. This opinion trickled down into Human Resources. *Id.* This decision ultimately led to the Plaintiffs in this litigation either being placed on indefinite unpaid leave, terminated, subjected to severe testing and masking measures, forced to resign or retire under duress, demoted or subject to other job limitations, or coerced into taking the vaccine. *Id.* ¶¶ 5, 7, 10, 16–21.

After Plaintiffs filed this mass action in the Northern District of Texas (the "Texas Court"), United filed a motion to dismiss and motion to transfer venue. ECF 7, 9. Plaintiffs sought—and were granted—a stay pending the Fifth Circuit's review of the class certification decision in *Sambrano v. United Airlines, Inc.*, 4:21-cv-01084. ECF 12. After the class determinations here were finally decided by the Fifth Circuit, the Texas Court re-opened the case on May 4, 2026.

United filed its motion to transfer on May 26, 2026. On June 25, 2026, the Texas Court issued an order transferring the case to this Court. ECF 44. United filed its Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) on August 3, 2026. ECF 54.

## RELEVANT LAW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).

## ARGUMENT

United's Motion to Dismiss stretches the bounds of Rule 12's parameters beyond their breaking point, including by lodging numerous evidentiary-based contentions. The Court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "A complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." *Id.* (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)) (quotation marks omitted). The plaintiff only needs to show "that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* at 1083. Applying these standards, United's Motion must be denied.

### I. Plaintiffs Exhausted Administrative Remedies.

#### A. United impermissibly relies on evidence to support its pleading challenge.

Straight away, United's Motion to Dismiss should be denied because it presents evidence-based arguments inappropriate for a pleadings challenge. First, the failure to exhaust "is normally considered to be an affirmative defense." *Mosely v. Board of Education of the City of Chicago*,

434 F.3d 527, 533 (7th Cir. 2006). A plaintiff thus "ha[s] no obligation to allege facts negating an affirmative defense in her complaint." *Id.*; *see also Szczesny v. Village of River Forest*, No. 20-cv-5661, 2021 WL 2311972, at *9 (N.D. Ill. June 7, 2021) (Shah, J.) ("failure to exhaust administrative remedies is an affirmative defense that the complaint need not anticipate"). The Seventh Circuit has reversed a dismissal on similar procedural facts since "[t]here [wa]s nothing on the face of [plaintiff's] complaint that compels a conclusion that she failed to exhaust." *Id.* Just so here, nothing in the Complaint compels the conclusion that 195 Plaintiffs failed to exhaust their administrative remedies. Dismissal is just as inappropriate here as it was in *Mosley*.

Next, United presents the following evidence to support its Rule 12(b)(6) Motion: a sworn declaration by one of its own employees; a government agency's FOIA response; a set of documents no party attached to the pleading; and a chart its counsel prepared. United's dependence on evidence dooms its Rule 12(b)(6) pleadings challenge.

In support of its Rule 12(b)(6) Motion to Dismiss, United presents Exhibit B, which is the Declaration of Delzy Rosa Craig, United's Employment Litigation Manager. ECF 54-1, App. 0026–0054. It is sworn testimony. And, of course, United's Declaration is not a document attached to the Complaint, it is not referenced in the Complaint, and it is not central to any claim Plaintiffs plead. United offers this evidence to establish facts found nowhere in the pleading: that United "has no record of notice from the EEOC (or any other source) of charges being filed" by 192 Plaintiffs, that one Plaintiff withdrew her charge, and that two others have charges pending. Ex. B (Craig Decl.) ¶¶ 6, 8; *see* ECF 54 at 6. Exhibit C is an EEOC FOIA response dated January 31, 2025—correspondence between United's counsel and a federal agency, generated during this litigation, addressed to no issue Plaintiffs pleaded, and also not attached to Plaintiffs' Complaint.

ECF 54 at 6; Ex. C, App. 0056–59. Like the Declaration, it is evidence supporting the argument that 195 Plaintiffs be dismissed from this case. United's proffered evidence is impermissible.[1]

On a Rule 12(b)(6) motion, "the court reviews the complaint, 'documents attached to the complaint[,] and documents that are referenced in and central to its claims.'" ECF 54 at 3 (quoting *Gill v. CEC Emp. Gp., LLC*, No. 19-cv-8099, 2020 WL 5909068, at *1 (N.D. Ill. Oct. 6, 2020) (Shah, J.)). The Court also considers "information that is subject to proper judicial notice." *Doermer v. Oxford Financial Group, Ltd.*, No. 16-cv-8248, 2017 WL 770996, at *1 (N.D. Ill. Feb. 28, 2017) (Shah, J.).

United's exhibits violate this well-established rule. This Court has rejected the consideration of materials such as these attached to a motion to dismiss. In *Szczesny v. Village of River Forest*, defendants attached signed releases to their supporting brief. This Court disregarded them: "I do not consider the releases because (1) they are not central to plaintiff's claim and (2) release is an affirmative defense that the complaint need not anticipate." 2021 WL 2311972, at *6 n.3. This Court held that "failure to exhaust administrative remedies is an affirmative defense that the complaint need not anticipate." *Id.* Both reasons apply with equal force here.

Indeed, this Court has warned against precisely the use United makes of its exhibits, quoting the Seventh Circuit: the incorporation exception "is a narrow exception aimed at cases interpreting, for example, a contract, and **[i]t is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.**"

[1] Further, the declaration is not the kind of evidence that could be accepted uncontested even if the Court were inclined to consider it. Ms. Craig states that her testimony rests on "personal knowledge, [her] review of relevant documents, and information provided by individuals working with [her] or under [her] supervision." Ex. B (Craig Decl.) ¶ 3. Whether United's internal log captures every charge the EEOC transmitted over four years, whether every transmission was received and logged, and whether the absence of an entry means a charge was never filed are all questions Plaintiffs are entitled to test. They are not questions a court resolves at this stage.

*Dobrowolski v. Intelius, Inc.*, Nos. 17-cv-1406 et al., 2017 WL 3720170, at *1 (N.D. Ill. Aug. 29, 2017) (Shah, J.) (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (emphasis added) (quotation marks omitted)). The Court refused a defendant's evidentiary exhibits, observing that passing references in a complaint do not make a defendant's materials "fair game for inclusion with a motion to dismiss." *Id.*

United tries to shoe-horn in its evidence through judicial notice, but even the authority it cites does not reach its proffered material. *Saud v. DePaul University* permits a court to "take judicial notice of the charge that Plaintiff filed with the EEOC, which Defendants attach to the motion to dismiss." No, 19-cv-3945, 2020 WL 5702165, at *4 (N.D. Ill. Sept. 24, 2020); *see* ECF 54 at 7 n.9. That is a rule about a document that exists and whose contents are not in dispute. United does not ask the Court to notice a charge. It asks the Court to find that 192 charges *do not exist*, on the say-so of a company witness describing the company's own internal log. Nothing in *Saud*—and nothing in the doctrine of judicial notice—permits a court to take notice of the absence of a document from a private party's files. This Court has refused judicial notice on a motion to dismiss where the movant "cite[d] no authority for the proposition . . . that judicial notice of any of these materials, or consideration of the information they contain, is appropriate at this stage on a motion to dismiss where the complaint plausibly alleges" otherwise. *CDM Media USA, Inc. v. Simms*, No. 14-cv-9111, 2015 WL 1399050, at *6 (N.D. Ill. Mar. 25, 2015) (Shah, J.). Where this Court has taken notice in an employment case, it has done so as to **actual, existing** agency records—an Illinois Department of Human Rights notice, a civil-rights complaint, a Human Rights Commission order—and it denied the motion to dismiss even then. *Morales v. Goodwill Industries of Southeastern Wisconsin, Inc.*, No. 14-cv-2370, 2014 WL 4914255, at *1, *4 (N.D. Ill. Sept. 30, 2014) (Shah, J.). Noticing the content of a document that exists is not the same as accepting a

party's sworn (and self-interested) assertion—which, critically, Plaintiffs are unable to test through cross-examination or the discovery process—that a document does not exist.

Here, the Complaint affirmatively alleges Plaintiffs did exhaust their administrative remedies: "[Af]ter making a charge against United with the EEOC, Plaintiffs have been issued Right to Sue letters." SAC ¶ 24. United calls that allegation "collective and conclusory." ECF 54 at 6. But it is a plain allegation of exhaustion, and as such it must be taken as true at this stage.

**B. United's scope-of-charge arguments cannot be resolved on the pleadings.**

When analyzing whether a claim is within the scope of an EEOC charge, courts consider whether the claim "can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). And a charge "need not allege . . . each and every fact that combines to form the basis of each claim in [the] complaint." *Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *see id.* at 501 (the "same conduct . . . same individuals" formulation states what the charge and complaint must show "at minimum"). Charges are read "liberally, because such charges are often initiated by laypersons rather than lawyers," and the qualification United would need—that the charging party was represented by counsel—is a per-plaintiff showing it has not attempted for any of the 56. *Chaidez*, 937 F.3d at 1005 n.3.

United's own Plaintiff examples fail. United says Karlene Pattenaude "only asserted disability discrimination in her charge, but now alleges Catholic beliefs and a Title VII claim," and that Gisselle Hartsfield's charge asserted only an ADA "impairment." ECF 54 at 7. The Complaint explains why. Both Plaintiffs allege that they wished to request a religious accommodation and that "United's Help Hub system was not designed to allow a person to submit both Medical and Religious Accommodation requests," and that "United provided no guidance as to how to notify the company" of a religious request. SAC ¶¶ 1066, 1287. A charge that reflects

the only track United's system permitted describes the same conduct—United's refusal to accommodate an unvaccinated employee—and implicates the same individuals. Whether an EEOC investigation of that charge could reasonably have reached the religious claim is a fact question, to be answered charge by charge on 56 charges United has placed in an appendix. Plaintiffs have not had an opportunity to address those questions. That is not a pleading question.

### C. Alternatively, Plaintiffs should be permitted to replead.

Because charge-filing is a claim-processing rule rather than a jurisdictional bar, *Fort Bend County v. Davis*, 587 U.S. 541, 549–50 (2019), any pleading defect is curable. This Court has expressly agreed in United's own lead authority.. In *Leggette*, this Court wrote that "**[d]ismissal on the basis of failure to exhaust administrative remedies is without prejudice**," and dismissed only one count. *Leggette v. Dr Pepper/Seven Up, Inc.*, No. 22-cv-2376, 2022 WL 6750261, at *2 (N.D. Ill. Oct. 11, 2022) (Shah, J.); *see also Cesario v. Jewel Food Stores, Inc.*, No. 17-cv-319, 2017 WL 5152348, at *7 (N.D. Ill. Nov. 7, 2017) (Shah, J.). *Leggette* is also distinguishable at its root: that plaintiff conceded she had **never received** a right-to-sue letter. Here, United asserts only that *it* has no record of charges—a contested fact outside the pleading, not an admission on the face of the Complaint. To the extent the Court finds any Plaintiff's exhaustion inadequately pleaded, Plaintiffs request leave to amend.

## II. This Court Should Apply Equitable Tolling for Any Claims Found to Be Filed Two-Business Days Late.

United asks for relief this Court has called extraordinary: "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cesario*, 2017 WL 5152348, at *5 n.5. Dismissal follows only "when the plaintiff pleads himself out of court by alleging facts that conclusively establish that the defense applies." *Id.*; *accord Elue v. City of Chicago*, No. 16-

cv-9564, 2017 WL 2653082, at *8 (N.D. Ill. June 20, 2017) (Shah, J.) (dismissal proper "only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense") (quoting *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014)). Here, Plaintiffs have not pleaded any allegations establishing an affirmative defense. Because the 90-day calculation here operated off the unusual trigger of a class certification decision, this Court should apply equitable tolling covering the two-business-day period to ensure 463 Plaintiffs do not suffer the extreme sanction of forever losing their claims.[2]

The Seventh Circuit has long recognized tolling where a claimant "has actively pursued his judicial remedies." *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (quoting *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990). The operative facts here show that Plaintiffs have indeed actively pursued their judicial remedies. Representatives of the Plaintiffs here spent nearly three years pressing these claims through a certified class proceeding before a federal court. When certification was limited, Plaintiffs filed their own action four calendar days after the ninety-day mark—using the date of the signing of the class order on Friday afternoon—making the filing two business days late according to United.[3] That is not mere "garden variety excusable neglect," especially when this case is anything *but* "garden variety" given the number of Plaintiffs and the procedural posture in the Northern District of Texas and Fifth Circuit. This is the paradigmatic case of a claimant who "actively pursued his judicial remedies." *Cf. Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983) (suit timely within ninety days of certification denial).

---

[2] Nor can United claim any prejudice as it long had notice of the claims here, fighting against class certification for several years. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).

[3] This was likely within ninety days of any Plaintiff receiving notice of the district court's ruling after the weekend.

It would be especially inequitable for these claims to be dismissed when the Fifth Circuit—where this case was initially filed—has a seven-day safe harbor rule that would have applied to the filing deadline had the case remained in Texas. *See Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 740–41 (S.D. Tex. 2023). The Court should not dismiss the claims of up to 464 Plaintiffs under the unusual procedural complexity of this action, even if the Plaintiffs filed their claims two business days late (when counsel, only recently retained, was out of the country).

Another reason it would be inequitable to dismiss the Plaintiffs' case is that, in the Seventh Circuit, the 90-day clock only starts to run on the date the claimant or her attorney received the right to sue letter. *DeTata v. Rollprint Packaging Products, Inc.*, 632 F.3d 962, 967 (7th Cir. 2011); *Housten v. Sidley & Austin*, 185 F.3d 837, 839 (7th Cir. 1999); *Lax v. Mayorkas*, 20 F.4th 1178, 1182–83 (7th Cir. 2021); *Kinder v. Marion County Prosecutor's Office*, 132 F.4th 1005, 1008 (7th Cir. 2025). Here, Plaintiffs' attorneys were not counsel for the Plaintiffs when the class certification was denied. "[W]ritten notice is required and have consistently held (as have our sister circuits) that the 90-day period does not start running until the claimant (or her agent) actually receives the right-to-sue letter from the EEOC. *DeTata*, 632 F.3d at 967. There is thus a fact question as to when the Plaintiffs received notice of the class certification decision. At the least, the court should "hold an evidentiary hearing to decide the question." *Id.* at 970 (citing *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1313–14 (7th Cir. 1984).

Additionally, when the date of receipt is unknown, the district courts in this circuit routinely presume that the right to sue letter was received **five days after mailing**. *Lloyd v. Sullivan*, 882 F.2d 218 (7th Cir. 1989); *Hardiman v. Lipnic*, 455 F.Supp.3d 693, 701–02 (N.D. Ill. 2020); *Ananias v. Stratton*, No. 11-3274 (C.D. Ill. 2014). Thus, if the five-day-mailing rule applies, Plaintiffs *did* timely file because they filed within five days after the 90-day clock started.

## III. Plaintiffs' Retaliation Claims Should Not Be Dismissed.

Contrary to United's arguments, Plaintiffs also state cognizable retaliation claims. To state such a claim under Title VII, a plaintiff must show "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lesiv v. Illinois Central Railroad Co*., 39 F.4th 903, 911 (7th Cir. 2022). United claims that: (1) Plaintiffs' retaliation claims cannot overlap with their discrimination claims; (2) Plaintiffs do not allege protected oppositional conduct; and (3) Plaintiffs do not allege materially adverse treatment. Each of these arguments fails.

### A. Retaliation claims can overlap with their failure to accommodate claims.

Contrary to United's understanding, allegations of unreasonable accommodations routinely (and properly) overlap with allegations of retaliation in discrimination cases. *See, e.g., Davies By & Through Davies v. Lackawanna Cnty*., No. 3:15-cv-1183, 2018 WL 924205, at *2 (M.D. Pa. Feb. 14, 2018) ("Here, there are claims of discrimination based on failure to accommodate Plaintiff's disability, which are factually intertwined with the retaliation claim."); *see also Huge v. Boeing Co*., No. C14-857 RSM, 2015 WL 6626568, at *11 (W.D. Wash. Oct. 30, 2015) (denying the employer's summary judgment motion because fact issues remained as to whether placing plaintiff on unpaid leave after she sought an accommodation was retaliatory and an unlawful accommodation). And, as United acknowledges, a court in this District in a case against United has found that overlapping allegations may support both a retaliation and failure to accommodate claim. *See Reinauer v. United Airlines, Inc*., No. 25 C 14132, 2026 WL 1430494, at *9–10 (N.D. Ill. May 21, 2026). This Court should find the same.

### B. Plaintiffs alleged protected oppositional conduct.

Next, United argues (at 14) that requesting an accommodation is not by itself opposition

conduct under Title VII. Yet a "plaintiff need not . . . have opposed an action that in fact violated Title VII to win a retaliation claim. . . . All that is required is that she reasonably believed in good faith that the practice she opposed violated Title VII." *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (quotes omitted); *Brooks v. City of Kankakee, Illinois*, 7 F.4th 649, 660-61 (7th Cir. 2021) ("we have 'repeatedly held that a plaintiff need not . . . have opposed an action that in fact violated Title VII'") (quoting Fine, 305 F.3d at 752); *Rongere v. City of Rockford*, 99 F.4th 1095, 1104 (7th Cir. 2024). "[W]hat matters is whether the record supports the plaintiff's objectively reasonable belief that the employer discriminated against him." *Anderson v. Am. Foods Grp. LLC*, 2026 WL 161340, at *3 (7th Cir. Jan. 21, 2026). Plaintiffs' Complaint satisfies these requirements. Further, as Judge Kendall explained, "Title VII is broad and the term 'oppose' carries its ordinary meaning and applies where 'someone . . . has taken no action at all to advance a position beyond disclosing it.'" *Reinauer*, 2026 WL 1430494, at *9 (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (rejecting strict definition of "oppose" for a retaliation claim). Plaintiffs alleged their resistance to the vaccine policy, which is more than sufficient to satisfy this low pleading threshold.

### C. Plaintiffs alleged materially adverse treatment.

Finally, United cannot be heard credibly to claim (at 14–15) that Plaintiffs did not allege that United took "materially adverse action" against them. An employment action must be "materially adverse to a reasonable employee or job applicant" such that it "could well dissuade a reasonable worker from" engaging in the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "'Discriminate against' means treat worse." *Muldrow*, 601 U.S. at 355. A "retaliatory action is 'materially adverse'" when "it causes 'significant' harm." *Id.* at 357. "[C]ases in which the employee's compensation . . . are diminished" are "actionable,

materially adverse employment actions" "for purposes of Title VII." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)).

United's retaliatory action caused "significant harm" such that it would "dissuade a reasonable worker from" engaging in the protected activity. Plaintiffs faced the consequence of not receiving a paycheck by not complying with the vaccine policy. This automatically constitutes a "materially adverse employment action." *Nagle*, 554 F.3d at 1116. Further, Plaintiffs allege that they faced "the impossible choice of either receiving the COVID-19 vaccine—at the expense of their religious beliefs and health—or losing their livelihoods." SAC ¶ 13. These allegations more than suffice at this stage. *See Reinauer*, 2026 WL 1430494, at *10.

## IV. All ADA Claims and Title VII Claims More than Adequately State a Claim for Relief.

### A. The ADA Plaintiffs Plausibly Allege Qualifying Disabilities.

United argues (at 9) that the ADA Plaintiffs "allege that their impairments preclude vaccination or wearing masks, but fail to connect their impairment to a major life activity." United's contention refutes itself. Living and *working* in a healthy manner—that is, without suffering the dangerous consequences resulting from taking a vaccine given a health condition—is a "major life activity." *See, e.g.*, SAC ¶ 808. Those Plaintiffs plausibly allege ADA disabilities.

United desires further specificity, but it cannot argue that the Complaint lacks allegations that the ADA Plaintiffs have suffered impairment of a major life activity: working while receiving vaccines. These allegations, of course, must be accepted as true at this Rule 12 stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). Plaintiffs have therefore adequately pleaded qualifying disabilities. If, however, the Court desires further specificity to Plaintiffs' disability related allegations, Plaintiffs respectfully move for leave to amend the Second Amended Complaint.

**B. All Title VII Plaintiffs More than Adequately Allege Adverse Actions.**

In the Complaint, Plaintiffs have detailed the adverse actions United took against five categories of Plaintiffs. SAC ¶ 23. United fails to challenge Categories (1) and (3), and thus effectively concedes that they have been sufficiently pleaded. Yet United somehow takes issue with Categories (2), (4), and (5), arguing that these Categories do not "plausibly allege an actionable impact on the terms, conditions, or privileges of their employment." Motion at 16. United's argument fails.

***i. Category (4): Punitive Masking and Testing***

United argues that the employment practice of compelled (and physically invasive) medical testing and the forced wearing of a facial respirator (at 11) is not an adverse action. But it is not simply these measures that constitute adverse actions. The masking-and-testing protocol, while damaging in itself, directly caused Plaintiffs to suffer harassment, humiliation, ridicule, and unnecessary isolation. SAC ¶ 807. Critically, United also banned employees from participating in regular company activities. *Id*. This practice alone is an adverse action. Plaintiffs have thus more than sufficiently pleaded an actionable adverse action.

***ii. Category (5): Compelled Vaccination of Employees***

United next argues (at 12) that "133 Plaintiffs who got vaccinated… cannot show some injury respecting [their] employment terms or conditions… because nothing about their job changed." (internal quotations and citations omitted). But the decision forced upon Plaintiffs was an adverse action itself: Plaintiffs were "forced to either take the vaccine (at the cost of [his] [religious belief and/or health risk]) or be forced into a position where [he] could not provide for [his] family (an equally important religious belief)." *See, e.g.,* SAC ¶ 1062. The immense stress and pressure this placed upon Plaintiffs adversely affected the conditions of their employment. Plenary discovery would further flesh out the harms each Plaintiff suffered. Plaintiffs have thus

adequately pleaded claims as to all Plaintiffs who were compelled to become vaccinated.

***iii. Category (2): Demoted Employees***

Plaintiffs allege, in detail, that numerous Plaintiffs suffered effective demotion by United as a direct result of their refusal to become vaccinated:

> United allowed certain employees within this group [non-customer facing] to work briefly in different roles, but the new roles were clear demotions. For example, Plaintiffs moved from roles such as gate agents to non-customer facing roles—Agent on Demand—where their job duties changed and they were penalized with reduced hours, overtime opportunities, shift differentials, and pay.

SAC ¶ 799 n.6. United argues that the Complaint purportedly does not further specify which Plaintiffs suffered which specific forms of demotion.

But for plausible pleading purposes, Plaintiffs' allegations more than suffice. In the discovery phase, which has yet even to commence, United will be able to garner further detail about the various forms of functional demotion it caused to Plaintiffs (though it of course already knows of the demotion details from its own internal records). Plaintiffs have cleared the low hurdle of plausibly pleading that effective demotion for refusing to take the vaccine was an adverse action.

United argues (at 12) that 11 Plaintiffs "fail to allege even basic facts supporting a Title VII claim." Motion at 12. But, ironically, United itself fails to identify who these 11 Plaintiffs are (save one). All United musters is reference to a single Plaintiff—Robin Wallner—who United complains did not allege enough specific facts regarding her claims. Even were this true, the alleged deficiency could be cured by leave to amend as to this lone Plaintiff. Critically, United's argument must fail as to the other 10 Plaintiffs because United is guilty of the crime it accuses—namely, United complains that 10 Plaintiffs have not provided enough factual detail to decipher what adverse actions were taken against them, yet United failed even to identify who these 10 Plaintiffs are in its motion. Without even so much as naming the 10 Plaintiffs, United has not

adequately stated the grounds of its motion as to these Plaintiffs. *See* FED. R. CIV. PROC. 7(b)(1) ("The motion must: … state with particularity the grounds for seeking the order.").

## V. Plaintiffs' Disparate Treatment Claims Are Sufficiently Pled.

***Disparate Treatment Claims***. An employee is not required to "plead facts that prove intent and causation." *Lucas v. Ferrara*, No. 13-C-1525, 2014 WL 3611130, at *5 (N.D. Il. July 22, 2014). Instead, the employee "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" the protected characteristic. *Id.* (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013).

As discussed above, United took adverse actions against Plaintiffs because of their protected status. In *Sambrano*, this Court assumed the plaintiffs did belong to a protected class. 707 F. Supp. 3d at 669. And United took numerous adverse actions against Plaintiffs precisely because they belonged to the protected class presumed by this Court. For instance, United arbitrarily cut off the deadline for submitting religious accommodations, yet still accepted requests for medical accommodation—despite that the ultimate effects of the two were essentially identical. SAC ¶ 1530. These actions confirmed United's hostility to requests for religious accommodation. "United did not bother engaging in an interactive process with accommodation seekers because it never intended to provide them with a reasonable accommodation." *Id.* Additionally, by banning Plaintiffs from company activities, Plaintiffs have pleaded that United treated similarly situated employees outside of their protected class more favorably. SAC ¶ 808. Those without religious or medical objections to United's vaccine mandate suffered no similar restriction. Plaintiffs therefore were treated materially worse than those outside their protected class.

## CONCLUSION

Plaintiffs have suffered under United's coercion, discrimination, and retaliation for almost five years. The Court should deny United's newest attempt to avoid liability.

September 2, 2026

Respectfully submitted.

*<u>/s/ John C. Sullivan</u>*
John C. Sullivan
Texas Bar No. 24083920
Jace R. Yarbrough
Texas Bar No. 24110560
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com