**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRACY BROWN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Case No. 1:26-cv-07487<br><br>Hon. Manish S. Shah |

**UNITED AIRLINES, INC.'S REPLY MEMORANDUM IN SUPPORT OF
RENEWED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## INTRODUCTION

Though Plaintiffs claim that United is relying on improper sources or "stretch[ing] the bounds of Rule 12's parameters," nothing could be further from the truth. Opp. 3. In this motion, United simply asks this Court to apply settled law to allegations in the Complaint and to EEOC charges that Plaintiffs concede are judicially noticeable. Opp. 6.

- United's lead basis for dismissal is that 455 Plaintiffs filed suit over 90 days after the expiration of *American Pipe* tolling, which does not even arguably require the Court to consider "evidence." Moreover, 27 Plaintiffs who first sued in a subsequent amended complaint are independently time-barred, likewise, based on the face of the complaint.[1] These 464 Plaintiffs' dismissals should be with prejudice.
- United's scope-of-the-charge objections rest solely on judicially noticeable EEOC charges that this Court should consult directly. United provided a declaration and appendix as aids for the Court's review, yet *nothing* in United's dismissal argument requires using those materials. This Court should dismiss those claims with prejudice, as the Texas court did.
- As for United's argument that 195 Plaintiffs lack an EEOC right-to-sue letter, a prerequisite to filing suit, Plaintiffs argue that the Court must ignore reality and accept their conclusory boilerplate legal conclusion as a plausible factual allegation that 709 Plaintiffs did exhaust administrative remedies. The law does not require this result; instead, any Plaintiffs not dismissed on other grounds should be required to individually plead their charge status.
- The retaliation claims face three independent legal obstacles, and Plaintiffs' disparate treatment claims conflate differential treatment *based on vaccine status* with religion or a disability, and fail with prejudice.

---

[1] Some of those 27 were already time-barred as of the initial complaint. *See* Mot. 6.

- Plaintiffs' responses fail legally as to their ADA claims and are inadequately pleaded as to their Title VII claims, where the absence of allegations plausibly alleging an adverse employment action cannot be excused by the legally unsupported view that a plaintiff may omit factual allegations from the complaint in hopes that discovery will unearth those, because "before discovery may commence," "the complaint itself must contain sufficient factual detail." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009).

The Court should thus grant dismissal, and as to untimeliness, scope-of-the-charge, ADA claims, disparate treatment and retaliation, and those Title VII adverse-action issues that Plaintiffs cannot cure, do so with prejudice.

## DISCUSSION

### I. All Claims for the Hundreds of Concededly Untimely Plaintiffs Should Be Dismissed.

**1.** Plaintiffs do not dispute that 464 Plaintiffs filed their claims late. Opp. 8–10; *see also* 42 U.S.C. § 2000e-5(f)(1). They agree that the class certification order triggered the limitations period for most Plaintiffs, Compl. ¶ 24; that the order was entered on June 21, 2024; and that the Complaint was filed ninety-four days later, *see* Opp. 8–10. Plaintiffs have thus pleaded themselves out of court.[2]

To avoid dismissal, Plaintiffs suggest that equitable tolling should apply for four reasons: (1) the limitations period had an "unusual trigger," (2) Plaintiffs have "pursued their judicial remedies" and this is not "garden variety excusable neglect," (3) the Fifth Circuit would

[2] Plaintiffs argue the Court should ignore United's exhibits and appendix as improper evidence. However, Appendix 1, Exhibit A and the key tables in Exhibit B simply categorize and summarize allegations in the Complaint and/or EEOC charges to aid the Court in analyzing the 709-Plaintiff Complaint. *See, e.g.*, *SEC v. Ustian*, 229 F. Supp.3d 739, 763–64 (N.D. Ill. 2017) (permitting summaries of voluminous data). Moreover, courts are permitted to rely on EEOC charges and right-to-sue notices in ruling on motions to dismiss under Rule 12(b)(6). *See Hernandez v. Partners Warehouse Supplier Servs., LLC*, 890 F. Supp. 2d 951, 958 (N.D. Ill. 2012); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

supposedly apply a "safe harbor," and (4) there is a "fact question" of when Plaintiffs learned of the class certification decision. Opp. 8–10. These arguments all fail because, as United explained, Mot. 4–5, *American Pipe & Construction Company v. Utah*, 414 U.S. 538, 561 (1974) and *Lewis v. City of Chicago*, 702 F.3d 958, 961 (7th Cir. 2012) demand dismissal.

***Limitations Trigger.*** Plaintiffs do not dispute that they seek to take advantage of tolling under *American Pipe*. *See* Compl. ¶ 24. ("These Plaintiffs were previously included in one of the putative classes in *Sambrano* . . . but were not certified as a class. Their recourse now is to file suit[.]"). This means the claims of Plaintiffs who were putative class members in *Sambrano* were tolled "until class certification [was] denied" and, "[a]t that point, class members [had] to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983); *American Pipe*, 414 U.S. at 554. Here, all agree that the *Sambrano* court ruled on class certification 94 days before Plaintiffs here filed suit. Opp. 8–9.

Plaintiffs' arguments that this "limitations trigger" should not apply are meritless. *First*, a denial of class certification is the exact procedural trigger addressed in *American Pipe*. Plaintiffs cite no case that illustrates that additional tolling—beyond the tolling provided for by *American Pipe*—is necessary or that the issuance of a class certification order is an "unusual trigger." *American Pipe* thus requires dismissal.

*Second*, Plaintiffs are wrong that they "have not pleaded any allegations establishing [this] affirmative defense." Opp. 9. Their complaint on its face contains all the essential elements: (i) Plaintiffs were putative class members in *Sambrano*, (ii) Plaintiffs filed this action after the class certification order excluded them as putative class members, and (iii) the date of the filing of their complaint was more than 90 days after the class certification order, which the Complaint cites by docket and ECF number. *See* Compl. ¶ 14 (citing USDC No. 4:21-CV-1074, ECF 263 at 41).

As the Complaint thus reflects, the *Sambrano* court issued its class decision on June 21, 2024.[3]

***Garden-Variety Excuses.*** This case presents "garden variety" untimeliness because participating in a putative class and relying on *American Pipe* tolling is commonplace, and Plaintiffs cite no authority that creates a presumption of leniency for subsequent late filings in such cases. *See* Opp. 8–10. In fact, Plaintiffs do not engage with any of United's authority demanding dismissal for failing to comply with Title VII's strict 90-day deadline. Mot. 4–5. To the contrary, as Plaintiffs' own authority reflects, equitable tolling "is reserved for situations in which the claimant 'has made a good faith error (*e.g.*, brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.'" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (quoting *Jones v. Madison Service Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)). None of Plaintiffs' excuses meet this high bar.

*First*, Plaintiffs argue that this rule allows tolling any time "a claimant 'has actively pursued his judicial remedies,'" such as by being putative class members in the *Sambrano* litigation. Opp. 9 (quoting *id.*). But Plaintiffs take this quote out of context. It actually states that courts "have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies *by filing a defective pleading during the statutory period*." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, at 96 (1990) (emphasis added). Plaintiffs did not file their Complaint until *after the statutory period*.

*Second*, Plaintiffs contend that they filed "two business days late (when counsel, only recently retained, was out of the country)."[4] Opp. 10. But "[d]elay caused by a plaintiff's attorney

[3] It "is a well-settled principle that the decision of another court" is subject to "judicial notice." *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996). Plaintiffs also concede (as they must) that they filed outside of Title VII's 90-day limitations period. Opp. 9 ("When certification was limited, Plaintiffs filed their own action four calendar days after the ninety-day mark . . . .").

[4] Plaintiffs' reference to business days is incorrect. The law is clear that weekends and holidays count toward the running of the 90 days when, as here, the ninetieth day falls on a business

is not an independent basis for equitable tolling." *Cosby v. United Air Lines, Inc.*, 1996 WL 204323, at *3 (N.D. Ill. Apr. 24, 1996) (citing *United States v. Di Mucci*, 879 F.2d 1488, 1496 (7th Cir. 1989)). "If an attorney's neglect could protect the client from unfortunate consequences, neglect would become a basis to protect both the client and the lawyer." *Id.*; *see also Newson v. American Nat. Can Co.*, 2001 WL 1555200, at *7 (N.D. Ill. Dec. 4, 2001) (applying this principle to bar Title VII claims "because to do otherwise would be to effectively eviscerate the 90 day notice rule and replace it with one which excuses counsel's negligence") (internal quotations omitted). Moreover, Plaintiffs' counsel states he was traveling internationally around the time of the *expiration* of the 90-day period (and that he was not hired until some unspecified date "recently" before that) but—represented or not—Plaintiffs offer no explanation that could excuse their delay of waiting over three months after the class certification decision to obtain counsel and/or file suit. Opp. 9; *see, e.g.*, *McCladdie El v. United Airlines, Inc. et al*., 2026 WL 2497989, at *2 (7th Cir. Aug. 25, 2026) (rejecting equitable tolling for a *pro se* plaintiff asserting a Title VII COVID-19 claim since "[e]ven under the most generous construction of the timeline he presented to the district court . . . [plaintiff] waited a further 92 days to file his suit"). *See also infra* n.5 (explaining Plaintiffs' counsel's involvement in this and the *Sambrano* litigation).

*Third*, lack of prejudice to United (Opp. 9, n.2) is not an independent basis for equitable tolling. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151–152 (1984). Even so, United would be prejudiced by having to incur the cost and litigation risk of defending against hundreds of time-barred claims, which Congress and the Supreme Court have mandated should not proceed.

***Mailbox Rule for EEOC Notices.*** Plaintiffs next argue it would be "especially inequitable"

---

day, *i.e.*, Thursday, September 19, 2024. *Grzanecki v. Bravo Cucina Italiana*, 408 F.App'x 993 996 (7th Cir. 2011) ("Federal Rules of Civil Procedure . . . require[s] the inclusion of weekends and holidays in a 90-day period").

to dismiss this case rather than apply Fifth Circuit law to it. Opp. 10. *First*, no inequity arises from applying forum law after a transfer; to the contrary, precedent demands it. Indeed, this Court contemplated these briefs would "now apply[] Seventh Circuit precedent." ECF 52; *see McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) (applying Seventh Circuit law after § 1404 transfer). *Second*, Plaintiffs incorrectly characterize the Fifth Circuit's rule, which would have no application to this case even if it were still pending in Texas, as United previously explained. *See* Civil Action No. 4:24-00902 (N.D. Tex.), ECF. 42 at 6-7. In short, (1) the Fifth Circuit does not have a blanket seven-day safe harbor, but permits a presumption for the time it takes to receive a right-to-sue letter *via mail* where a date of receipt cannot be determined, *see Hunter-Reed v. City of Hous.*, 244 F. Supp. 2d 733, 740–41 (S.D. Tex. 2003); and (2) in any event, such mailbox-type presumption would not apply here because the 90-day limitations period began with the *Sambrano* court's order under *American Pipe* tolling, *not receipt of an EEOC right-to-sue notice*. Plaintiffs' argument that "district courts in [the Seventh Circuit] routinely presume that the right to sue letter was received five days after mailing" fails for the same reason. Opp. 10. No mailing of an EEOC right-to-sue letter (or any other document) is at issue here and, as explained next, the expiration of *American Pipe* tolling operates automatically irrespective of actual notice.

***Notice Irrelevant for Court Decision Trigger.*** Plaintiffs' final argument is that a supposed fact question exists as to when Plaintiffs received notice of the *Sambrano* class certification order. Opp. 10. But as United explained (Mot. 5), in the Seventh Circuit "[a] decision against certification, or a limited certification, ends the tolling and the time resumes running. Resumption is automatic; neither *American Pipe* nor *Crown, Cork & Seal* suggested that it depends on anyone's knowledge that class certification had been denied or the scope of a class limited." *Lewis*, 702 F.3d at 961 (citations omitted). And since notice is irrelevant, their arguments that they were

unrepresented at the time of the class certification order such that counsel did not inform them of the decision until days later, are similarly unavailing. *Lewis* thus demands dismissal here.[5]

**2.** Lastly, Plaintiffs do not (and cannot) contest United's arguments that those Plaintiffs who "first filed their claims in one of two subsequent amended complaints" without a right-to-sue notice within the prior 90 days are untimely, and they did not even advance an argument for equitable tolling as to those Plaintiffs, thereby "forfeit[ing] the point[.]" Mot. 5; *Anderson v. United Airlines, Inc.*, 2023 WL 5721594, at *2 (N.D. Ill. Sept. 5, 2023). These 27 Plaintiffs must be dismissed from this case on that basis. Ex. B ¶ 10, Ex. D; *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

## II. The Court Should Dismiss Plaintiffs Who Failed to Administratively Exhaust.

### A. 56 Plaintiffs' Claims Exceed the Scope of Their EEOC Charges.

Plaintiffs' argument (Opp. 7–8) that the scope of an EEOC charge issue is unresolvable on a motion to dismiss misstates the law. These claims are straightforward: EEOC charges are judicially noticeable and the charges speak for themselves. Claims that exceed the scope of an EEOC charge have been dismissed under Rule 12 by this Court in many analogous cases, and were dismissed for this exact reason in *Sambrano*. *See* Mot. 7–8 (collecting cases). Nor is fine-grained

[5] Although notice is not required, it is misleading to suggest that Plaintiffs or their counsel were not in a position to know about the *Sambrano* court's publicly filed class certification ruling with ample time to timely bring suit. Mr. Sullivan has been counsel in *Sambrano* from inception to present and thus received the ECF notification as soon as the district court issued its class certification order on June 21, 2024, the putative class is well-organized, and the district court's decision was publicized in the news media. *E.g.*, Grace Elletson, United Workers Nab Partial Class Status in Vax Bias Suit, LAW360 (June 21, 2024) https://www.law360.com/employment-authority/articles/1850475 Finally, even if Mr. Sullivan did not technically represent the putative class members on whose behalf he now sues, he sought appointment as class counsel as early as January 12, 2024, *see* No. 4:21-CV-1074 (N.D. Tex.), ECF 238, where he pledged to "adequately represent the class," noting extensive experience "in cases involving Title VII, the ADA, and class actions." *Id.* at 36.

parsing required. United solely moved to dismiss those claims that utterly fail to reference any facts related to the religious or disability discrimination claim asserted—thus no amount of "liberal" construction (Opp. 7) can turn a Title VII claim into an ADA claim and vice versa. *See* Ex. E (EEOC charges); *see also* Ex. B ¶ 12–13 (table summary of those charge); Mot. 8 & n.9.[6] Tellingly, these Plaintiffs do not point to language in *any* of their charges that supposedly can be construed to support their out-of-scope claims.

Plaintiffs argue that United's Help Hub system did not allow both medical and religious accommodation requests, and that these Plaintiffs' EEOC charges needed to "track United's system." Opp. 7–8. But that is legally irrelevant (and dispelled by the Complaint's allegations). Legally, each Plaintiff had an obligation to inform the EEOC of the basis of his or her claim before suing in federal court—irrespective of United's internal HR processes. Mot. 7–8. It is also untrue that United's system inhibited the preparation of proper EEOC charges since other Plaintiffs here (unlike these 56) did include both medical and religious claims in their EEOC charge. *Compare e.g.*, Plaintiff Pattenaude, Ex. E, App. 1404 *with e.g.* Plaintiff Adjavon, Ex. E, App. 0922. The Court should dismiss the unexhausted claims of these 56 Plaintiffs.

**B. Lack of an EEOC Right-to-Sue Notice.**

Plaintiffs argue at length that the Court should presume all 709 Plaintiffs filed EEOC charges and received right-to-sue notices based on a single boilerplate statement in the Complaint, notwithstanding all contrary indications that nearly 200 Plaintiffs did not exhaust their administrative remedies. Opp. 3–7. United disagrees for the reasons already stated—and given that administrative exhaustion is a prerequisite to bringing suit, it is curious that Plaintiffs never once

[6] The 56 EEOC charges are in Ex. E, at App. 0939, 953, 956, 961, 999, 1023, 1044, 1055, 1066, 1071, 1080, 1089, 1104, 1113, 1121, 1140, 1141, 1162, 1179, 1201, 1206, 1220, 1226, 1249, 1295, 1323, 1327, 1328, 1333, 1352, 1359, 1384, 1388, 1389, 1392, 1404, 1437, 1443, 1444, 1446, 1471, 1489, 1502, 1530, 1533, 1535, 1539, 1542, 1560, 1572, 1581, 1601, 1602, 1604, 1616.

in their opposition (i) affirmatively aver that each-and-every Plaintiff does, in fact, have a right-to-sue notice (information within their knowledge), or (ii) specifically claim that United's records and the information from the EEOC are incorrect for any of the 195 Plaintiffs United identified. But, to be clear, United has not disputed (Mot. 7) that for a Plaintiff for whom lacking a right-to-sue notice is their *sole* infirmity, the Court can dismiss their claim without prejudice—enabling Plaintiffs to clarify the pleading and avoid needless further litigation should any of those Plaintiffs' claims survive this motion to dismiss. Resolving this at the earliest juncture is critical because the underlying events were years ago, so any Plaintiff without a charge (at least 192 of the 195) can no longer timely file one. 42 U.S.C. § 2000e-5(e)(1).

## III. Every ADA Claim and Most Title VII Claims Fail to State a Claim.

### A. None of the ADA Claims Plausibly Alleges a Disability.

Plaintiffs' ADA claims fail for want of allegations of an impairment and/or a substantial limitation, requiring dismissal. To start, Plaintiffs do not dispute that United has properly identified the 137 ADA Plaintiffs from the Complaint. *See* Ex. A. Nor do Plaintiffs address United's argument that "130 ADA Plaintiffs fail to plausibly allege an 'impairment'" under the ADA and relied on boilerplate allegations of an unspecified "health condition" in the Complaint. Mot. 9. As this is not enough to plausibly allege an "impairment"—i.e., a "physiological disorder or condition"—these 130 ADA claims must be dismissed for failure to plead an impairment (and on account of forfeiture). *Anderson*, 2023 WL 5721594, at *4; *Grindling v. Cathay Pac. Airways, Ltd.*, 2025 WL 1892564, at *4 (N.D. Ill. July 9, 2025).

Even if the Court found that each ADA Plaintiff plausibly pleaded an impairment, claims for all 137 ADA Plaintiffs fail for the independent reason that none alleges that the impairment substantially limits a major life activity (Mot. 9–10), and Plaintiffs' opposition only highlights this deficiency. *See* 42 U.S.C. § 12102(1)(A) (an ADA disability is "a physical or mental impairment

that substantially limits one or more major life activities of [an] individual."). Plaintiffs absurdly claim that "[l]iving and *working* in a healthy manner—that is, without suffering the dangerous consequences resulting from taking a vaccine given a health condition—is a 'major life activity.'" Opp. 13 (emphasis in original). It is unclear what limitation Plaintiffs refer to, or how living "*healthy*" demonstrates a disability under the ADA. Moreover, Plaintiffs who received an accommodation were exempted from taking the vaccine, Compl. ¶ 5, meaning, in Plaintiffs' words, they had no limitation to a major life activity. And, as numerous courts hold, "not being vaccinated is not a disability under the ADA"—instead, it is the alleged impairment that must substantially limit a life activity for one to be disabled and invoke the ADA's protections. *Grindling*, 2025 WL 1892564, at *4-5 (collecting cases). Finally, for ADA Plaintiffs who took the vaccine, they do not plausibly allege that it substantially limited their ability to "liv[e] or work[]."

The Court should also deny Plaintiffs' request to amend these claims, and dismiss the ADA claims with prejudice, as it would be legally futile to do so based on Plaintiffs' argument. *Gandhi v. Sitara Capital Management, LLC*, 721 F.3d 865, 869 (7th Cir. 2013). After all, under the ADA, "working while receiving vaccines" is not a substantial limitation of a major life activity. Opp. 13.

**B. Title VII Claims Without an Adverse Action or any Factual Basis Fail.**

Plaintiffs do not dispute that, for a Title VII failure-to-accommodate-religion claim, a plaintiff must allege an adverse employment action: "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Without citing any cases, *see* Opp. 14–16, they seek to defend their allegations. Plaintiffs are wrong.

***Category (2): Unidentified "Demoted" Employees.*** Plaintiffs agree that the sole allegation of any "demotion" is footnote 6 to Paragraph 799. Opp. 15. And yet, they argue that the footnote—which names no Plaintiffs who raise the claim, which roles they had, or how their new roles compared—meets *Twombly*'s pleading standard. Not so. Based on that footnote, United would

need to guess which of the 700-plus Plaintiffs raise a demotion claim, and from and to which roles they were assigned. Plaintiffs suggest that they need not identify who these Plaintiffs are because United can learn about their allegations through discovery or through its own records. But Plaintiffs' "argument that the exact details . . . will become clear during discovery runs counter to the holding of *Twombly*." *Bissessur*, 581 F.3d at 603.

***Category (3): Employees Who Voluntarily Separated.*** Plaintiffs do not address United's arguments as to these Plaintiffs and incorrectly represent that United does not challenge them. Opp. 14. For the reasons stated in United's Motion, *i.e.*, that voluntary retirement is not an adverse employment action, these claims are subject to dismissal. Mot. 12. Their claims are also forfeited. *Alioto*, 651 F.3d at 721.

***Category (4): Masking and Testing.*** Plaintiffs cite no cases holding that testing, masking, or social distancing, or any alleged stigma related to those practices, rises to the level of adverse actions. Opp. 14. As explained in United's Motion, they are not. *See* Mot. 12–13 (citing *McKay v. Wisc. Dep't of Revenue*, 2026 WL 1020625, at *16–18 (W.D. Wisc. Apr. 15, 2026) (masking not adverse action for hostile work environment, and collecting cases); *see also Paterakos v. City of Chicago*, 147 F.4th 787, 797 (7th Cir. 2025) (in COVID context, reassignment "to enable social distancing" was not "adverse employment action"); *Jackson v. Methodist Health Servs. Corp.*, 2023 WL 2486599, at *4 (C.D. Ill. Feb. 10, 2023), *aff'd*, 121 F.4th 1122 (7th Cir. 2024) (masking and testing was reasonable accommodation). Plaintiffs do not address any of these cases, which preclude their claims here.

***Category (5): Vaccinated Employees.*** Plaintiffs argue that the "stress and pressure" of deciding whether to get vaccinated is an adverse action, and that "[p]lenary discovery" would allow Plaintiffs to explain "the harms each … suffered." Opp. 14. This is wrong for two reasons.

*First*, *Muldrow* requires "some injury respecting [plaintiff's] employment terms or conditions." *Muldrow*, 601 U.S. at 359. Vaccination—and, more accurately, *voluntary vaccination*—is not a change in any term or condition of employment. Nor, as United explained but Plaintiffs did not address, was the *possibility* of unpaid leave an adverse action where it was never imposed on these Plaintiffs. *See* Mot. 13 (collecting Seventh Circuit cases). *Second*, Plaintiffs cannot resort to discovery to identify facts to clear Rule 8's pleading requirements, *Bissessur*, 581 F.3d at 603, especially when this is a matter within Plaintiffs' personal knowledge.

***Title VII Claims Without Individualized Facts Must Be Dismissed.*** Lastly, Plaintiffs contend United failed to identify the 11 Plaintiffs who failed to allege "basic facts supporting a Title VII claim." Opp. 15. They are mistaken. Exhibit A (No Personal Facts) clearly names them: Lisa Devetta Board, Amy Bridier-Delettre, Michael Bronowski, Roslyn Gene Byrne, Garit Engholm, Brandon Cody Fallis, Nancy Gannon, Lisa Ann Hutchins, Shahannah Gemora Miranda, Richard A. Torres, and Robin Wallner.[7] Plaintiffs discuss Wallner but do not explain how she (or any other Plaintiffs) clear the plausibility bar, or what Plaintiffs would replead if allowed to amend.

* * *

The Court should dismiss the Title VII claims for these 570 Plaintiffs, and the claims of the unidentified supposedly "demoted" Plaintiffs.

## IV. All of the Plaintiffs' Retaliation Claims Legally Fail and/or Are Time-Barred.

As an initial matter, the retaliation claims of the 464 untimely Plaintiffs fail for the reasons set forth above and must be dismissed with prejudice. *See supra* Part I. And, as explained next, three *independent* legal obstacles preclude the remaining Plaintiffs' retaliation claims.

---

[7] As explained above, Exhibit A no more than summarizes the allegations, and Plaintiffs do not dispute the accuracy of Exhibit A. The Court can thus review the claims of those Plaintiffs in the Complaint without relying on any "evidence."

***No Oppositional Activity.*** Plaintiffs argue that they engaged in oppositional activity because they "reasonably believed in good faith" that United's vaccination policy violated Title VII. Opp. 12. But the issue is not *why* the Plaintiff's requested accommodations—it is whether *requesting accommodations* itself is oppositional activity. It is not. "Oppositional" activity requires "*actually communicat[ing] to [the] employer a belief* that the employer has engaged in status-based discrimination." *Gomez v. Fed. Express, Inc.*, 72 F. Supp. 3d 902, 908 (N.D. Ill. 2014) (applying *Crawford v. Metro Gov't of Nashville & Davidson Cnty., Tenn*, 555 U.S. 271 (2009) (emphasis added)). Requesting an accommodation alone does not meet this standard because it fails to communicate any belief (whether good faith or not) of possible discrimination. Mot. 15.

***No Materially Adverse Treatment.*** Plaintiffs assert that "the consequence of not receiving a paycheck by not complying with the vaccine policy" is "automatically" adverse. Opp. 13. But that is not the relevant legal question. As Plaintiffs acknowledge, retaliation arises where it "would 'dissuade a reasonable worker from' engaging *in the protected activity*"—which here, they claim is the *request for an accommodation*. Opp. 13 (emphasis added). As to that issue, Plaintiffs do not explain how requesting an accommodation that allowed continued employment—rather than being terminated alongside all unvaccinated employees who did not request an accommodation—would *dissuade* a reasonable worker from making the request. Compl. ¶¶ 1527, 1544. It would not. As many courts have held, "[n]o reasonable worker would be deterred . . . from seeking an accommodation if they knew the alternative was termination." *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 670 (N.D. Tex. 2023); *Oka v. Air Line Pilots Ass'n*, 2024 WL 3888763, at *7 (N.D. Ill. Aug. 20, 2024).

***Duplicative.*** Numerous courts in this Circuit hold that a plaintiff cannot assert a retaliation claim based on a failure to accommodate. Mot. 14–15 (collecting cases). Rather than contend with

this precedent, Plaintiffs cite non-analogous, out-of-circuit cases, and a single outlier district court from the Seventh Circuit. Opp. 11. To start, *Davies By & Through Davies v. Lackawanna County* does not address whether a retaliation claim can be based on an accommodation decision, but instead rules on a pre-trial motion in limine where the retaliation and accommodation facts overlapped and where plaintiff was not entitled to a jury on both claims. 2018 WL 924205, at *1–2 (M.D. Pa. Feb. 14, 2018). Similarly, *Huge v. Boeing Company* is no help to Plaintiffs since the defendant did not argue, and the court did not address, whether the claims were improperly duplicative. No. C14-857 RSM, 2015 WL 6626568, at *11 (W.D. Wash. Oct. 30, 2015). And *Reinauer v. United Airlines, Inc.*, No. 25 C 14132, 2026 WL 1430494 (N.D. Ill. May 21, 2026), does not engage with the contrary authority in this Circuit and is subject to a pending motion for interlocutory appeal. *See* USDC No. 1:25-CV-14132, ECF 62 at 10–11.

## V. Any Disparate Treatment Claims Legally Fail and/or Are Time-Barred.

All disparate treatment claims for the 464 untimely Plaintiffs must be dismissed with prejudice. *See supra* Part I. Plaintiffs argue that their remaining disparate treatment claims survive because United treated them worse than employees who did not request accommodations "because of their protected status," which the "Court assumed" to be true in *Sambrano*. Opp. 16. But *Sambrano* did not involve disparate treatment claims. No. 4:21-CV-1074, ECF 156 at 42–46.

A disparate treatment claim requires Plaintiffs to allege a protected characteristic caused their employer to treat them worse than "similarly situated" employees—*i.e.*, those "directly comparable to [the plaintiffs] in all material respects." *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005). Plaintiffs respond by arguing that they "were treated materially worse than those outside their protected class" because those "without religious or medical objections" were not "banned" from "company activities." Opp. 16 (citing Compl. ¶ 808). Yet, Plaintiffs ignore their own allegations, which acknowledge that employees without religious or medical

accommodations who were similar to Plaintiffs in all other material respects—namely, those who *like Plaintiffs* refused the vaccine—were terminated from their employment. Mot. 16; Compl. ¶ 752. Plaintiffs cannot dispute that termination for those similarly situated employees was *worse* than remaining employed with an accommodation, even accepting as true that accommodated employees were banned from certain company activities. These claims thus cannot survive dismissal because any differential treatment was based on an unprotected characteristic—vaccination status—not disability or religion.

## VI. Plaintiffs' Request for Leave to Amend Is Improper.

Plaintiffs request leave to amend, which the Court should deny. *First*, "a request imbedded in a response brief" is not a "proper motion for leave to amend." *Novak v. State Parkway Condominium Ass'n*, 2015 WL 1058014 at *4 (N.D. Ill. Mar. 6, 2015). *Second*, district courts have broad discretion to deny leave to amend if a "party unjustifiably delayed in presenting its motion to the court, repeatedly failed to cure deficiencies, or if the amendment would be futile." *Gandhi*, 721 F.3d at 869. All of these reasons apply here. As to delay and failure to cure, Plaintiffs have twice amended the Complaint, *see* ECF 6, 21, and United has thrice moved to dismiss on substantially the same grounds presented here, *cf.* ECF 7, 29, 53. Plaintiffs have known of the pleading deficiencies since February 11, 2025, yet have failed to correct them over multiple amendments. As to futility, Plaintiffs nowhere propose what they would (or truthfully can) allege in a fourth complaint to remedy the deficiencies, and most of the errors presented in United's motion are legal obstacles which Plaintiffs cannot salvage through new or different factual allegations. As a result, any amendments would be futile and should be denied.

## CONCLUSION

The Court should dismiss these Plaintiffs' claims.

Dated: September 16, 2026

Respectfully submitted,

/s/ *Jonathan M. Linas*

Jonathan M. Linas (Bar No. 6290055)
Jordan M. Matthews (Bar No. 6300503)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: 312.269.4245
Facsimile: 312.782.8585
jlinas@jonesday.com
jmatthews@jonesday.com

Alexander V. Maugeri (Bar No. 5062666)
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212.326.3939
Facsimile: 212.755.7306
amaugeri@jonesday.com

Kristin M. Simonet (Bar No. 0399213)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8869
Facsimile: 312.782.8585
ksimonet@jonesday.com

**ATTORNEYS FOR DEFENDANT UNITED AIRLINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2026, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF filing system.

/s/ *Jonathan M. Linas*
Attorney for Defendant